IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LARRY SMITH,** | |
|     **Plaintiff,** | |
| **v.** | **Case No.:  2:06-cv-966-ID-SRW** |
| **HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC,** | |
|     **Defendant.** | |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

 

**Timothy A. Palmer**
**J. Trent Scofield**
**Brian R. Bostick**
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART**
**One Federal Place, Suite 1000**
**1819 5th Avenue North**
**Birmingham, Alabama 35203**
**(205) 328-1900 Telephone**
**(205) 328-6000 Facsimile**

**Attorneys for Defendant**
**Hyundai Motor Manufacturing Alabama, LLC**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.    ARGUMENT .......................................................................................................... 2

    A.    Plaintiff Cannot Prove a Prima Facie Case of Race Discrimination .............................. 2

        1.    Joshua Groves ................................................................................................ 3

        2.    Scott Weddington.......................................................................................... 5

    B.    Plaintiff Has Failed to Show That the Reason for His Termination is a Pretext for Discrimination ................................................................................................................ 5

        1.    Plaintiff's General Denial of Wrong-Doing Does Not Create a Disputed Issue of Material Fact ................................................................................................ 5

        2.    Plaintiff's Offer of "Me-Too" Evidence is Irrelevant ............................................ 6

        3.    Evidence of Other Alleged Discriminatory Motives is Irrelevant.......................... 7

    C.    Plaintiff's Retaliation Claim Fails as a Matter of Law ...................................... 8

        1.    Plaintiff Did Not Engage in Protected Activity ...................................................... 8

        2.    Plaintiff Cannot Prove a Causal Connection Between His Complaint and His Discharge ............................................................................................................ 9

        3.    Plaintiff Cannot Dispute the Legitimate, Non-Retaliatory Reasons for His Discharge .......................................................................................................... 10

    D.    The Evidence of Plaintiff's Habit to Lose His Temper is Highly Relevant .................. 11

III.    CONCLUSION...................................................................................................... 12

## I.     INTRODUCTION[1]

The undisputed record evidence establishes that Defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA") is entitled to summary judgment on all claims. Plaintiff, Larry Smith, cannot prove a prima facie case for his race discrimination claim because he cannot point to any persons outside his protected class who displayed multiple incidents of threatening behavior and insubordination and were not discharged. He offers no record evidence to support his allegations regarding Joshua Groves, and Scott Weddington is not alleged to have engaged in similar misconduct as Plaintiff. Even if Plaintiff could prove a prima facie case of discrimination, he cannot dispute HMMA's legitimate, non-discriminatory reasons for its actions (*i.e.,* his unprofessional and insubordinate behavior). His attempted offer of "me too" evidence does not support his claims.

Plaintiff's retaliation claim also must fail. Plaintiff argues that his vague complaints that he was being "harassed," or that Weddington "did not like his kind" constitute opposition to conduct made unlawful by Title VII of the Civil Rights Act of 1964. The law requires far more than such ambiguous expressions, however, to be considered to have engaged in protected activity. Further, Plaintiff cannot demonstrate a causal connection between his complaints and his termination because he has no evidence that the persons who made the decision to discharge his employment were aware of his complaints. Also, the incidents that led to Plaintiff's termination occurred prior to his complaint, which further negates any inference of a causal connection. Finally, as with his race

---

[1] Plaintiff did not respond to arguments regarding his hostile work environment claim, and therefore has abandoned that claim. See e.g., Wilkerson v. Grinnel Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); Bute v. Schuller International, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)(finding unaddressed claim abandoned).

1

claim, Plaintiff cannot dispute HMMA's stated reasons for his discharge. In short, HMMA is entitled to summary judgment on all claims.

## II.     ARGUMENT

**A.     Plaintiff Cannot Prove a Prima Facie Case of Race Discrimination**

To establish a prima facie case, Plaintiff must come forward with evidence that he was treated differently than others outside the protected class who engaged in "nearly identical" misconduct. See Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999). As for Plaintiff, it is undisputed that two HMMA employees (i.e., Reggie Johnson and Lisa Chumney) reported to management that Plaintiff had threatened them. Johnson complained that on November 22, 2005, Plaintiff had lost his temper, was yelling at him, appeared to want to physically harm him, and had called him a "nappy-head nigger." (Smith Depo., at 147:3-23) (Clevenger Decl., ¶¶ 1, 5, Exs. 1, 4)(Johnson Decl., ¶ 3). Other witnesses confirmed that Plaintiff was visibly upset and was the aggressor in the incident with Johnson. (Weddington Depo., at 29:3-30:6). Chumney reported that on November 28, 2005, Plaintiff had stepped toward her in an intimidating manner, made her cry, and stated that she felt physically threatened by Plaintiff. (Weddington Depo., at 47:10-48:15)(Chumney Decl., ¶¶ 3-4, Ex. 1). Plaintiff does not contend that either Johnson or Chumney lodged complaints against him because of his race. (Smith Depo., at 235:20-237:15).

It was also reported by three individuals (i.e., Scott Weddington, Marcus Hannah, and Karin Carter) that Plaintiff became belligerent in the meeting regarding the Chumney incident and began verbally attacking Weddington, who was Plaintiff's manager. (Hannah Decl., ¶ 5) (Clevenger Decl., ¶ 3, Exs. 2-5). Each said that Plaintiff lost his temper, and made several attacks against Weddington, including claiming that Weddington had "Satan running through his body." (Hannah Decl., ¶ 5)(Clevenger Decl., ¶ 3, Ex. 2-4). Against the backdrop of these undisputed facts, Plaintiff's

evidence relating to Joshua Groves and Scott Weddington does not establish conduct "nearly identical" to that of which he is accused.

### 1. Joshua Groves

Plaintiff claims that he heard Joshua Groves tell Reggie Johnson to "kiss his ass" on one occasion. (Smith Depo., at 142:19-143:13). Johnson and Groves both deny this allegation. (Groves Depo., at 12:9-19, 28:2-11) (Johnson Decl., ¶ 5). More importantly for purposes of the present motion, it is undisputed that Johnson never reported to HMMA management that Groves engaged in any physically threatening or insubordinate behavior. (Groves Depo., at 28:8-11)(Weddington Depo., at 17:22-19:1).[2] Vickers v. Federal Express Corp., 132 F. Supp. 2d 1371, 1380 (S.D. Ala. 2000)("[d]isparate discipline cannot be shown without first showing that the employer was aware of the comparator's misconduct."); St. Hilaire v. The Pep Boys, 73 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999)(holding in order to show that the employer treated comparators more favorably than the plaintiff, there must be evidence that the employer was actually aware that the comparators were engaging in conduct similar to plaintiff's at the time plaintiff was fired).

Even if this comment was similar to Plaintiff's aggression toward Johnson, it is undisputed that it was only after Plaintiff engaged in additional unprofessional behavior on a *second* occasion that disciplinary action was taken. (Smith Depo., at 210:12-19, Ex. 17) (Clevenger Decl., ¶¶ 3-7). Therefore, this situation is not comparable to Plaintiff's situation, because the repetitive nature of his behavior distinguishes his situation from the supposed misconduct of Groves. See Jordan v. City of

---

[2] Plaintiff incorrectly states in his brief that Groves submitted a written statement to Weddington about this incident with Johnson. (Plaintiff's Brief, at 5). However, Groves testified that he gave a statement only about the Larry Smith/Reggie Johnson incident, not any incident between he and Johnson. (Groves Depo., at 20:6-21:5, 22:7-23:20).

3

Gary, 396 F.3d 825, 834 (7th Cir. 2005)(finding that the plaintiff and a co-worker were not similarly situated because "[t]he record establishes that [the plaintiff] had an extensive track record of repeated and ongoing disciplinary problems prior to [the employer's] decision to appoint [the co-worker] as supervisor, while [the co-worker] did not"). Cooper v. Southern Co., 390 F.3d 695, 741 (11th Cir. 2004) (Title VII claimant's earlier placement in discipline program factor considered in concluding proposed comparators not similarly situated), cert. denied, 546 U.S. 960 (2005).

Plaintiff also contends that Joshua Groves and another Team Member (*i.e.,* Michael Harris) engaged in a fight at work, but only received a three day suspension. (Smith Depo., at 246:9-19). Plaintiff has no personal knowledge of this incident, but claims that Groves made an inadmissible, out-of-court hearsay statement to him about this supposed incident. (Smith Depo., at 239:21-23). However, Groves testified under oath during his deposition that he and Michael Harris had a verbal argument at work, but Groves strongly denies that it was anything more than a mild disagreement. (Groves Depo., at 9:9-10:11). Importantly, Groves did not report the incident to HMMA management or claim that Harris had physically threatened him, like Chumney and Johnson had claimed against Plaintiff. (Groves Depo., at 10:9-11, 11:3-11) (Weddington Depo., at 18:21-23, 41:1-42:22). Groves was only suspended on one occasion while at HMMA and that was for attendance problems. (Groves Depo., at 19:2-14).

Plaintiff's anecdotal testimony regarding the supposed fight between Groves and Harris is not admissible evidence. See Bogle v. Orange County Bd. of County Com'rs, 162 F.3d 653, 659 (11th Cir. 1998)(rejecting plaintiff's "anecdotal testimony" about alleged comparators where "witnesses who testified regarding these other incidents had no personal knowledge"). This allegation is simply not supported by competent admissible evidence and must be rejected.

4

### 2. Scott Weddington

There have been no allegations presented to Team Relations that Scott Weddington has ever engaged in physically threatening or insubordinate behavior similar to those reported against Plaintiff. (Swegman Decl., ¶ 6). Thus, Weddington did not engage in misconduct of the "same or similar conduct" to Plaintiff. Further, it is undisputed that the investigation revealed that Weddington's supervisor gave him permission to place parts on his company vehicle. (Swegman Decl., ¶ 5). No one at HMMA gave Plaintiff permission to threaten his co-workers or to be insubordinate to members of management. Thus, the "quality" of Plaintiff's misconduct was different than that of Weddington. (Swegman Decl., ¶ 5) (Weddington Depo., at 39:2-7). Finally, Weddington is clearly not a proper comparator because Weddington, a Manager, and Plaintiff, a Team Member, held different jobs. See Hanley v. Sports Authority, 143 F. Supp. 2d 1351, 1359 (S.D. Fla. 2000)(holding that co-employee in a different position than plaintiff was not an appropriate comparator for race-based disparate treatment claim), citing Holifield v.Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

**B.   Plaintiff Has Failed to Show That the Reason for His Termination is a Pretext for Discrimination**

### 1. Plaintiff's General Denial of Wrong-Doing Does Not Create a Disputed Issue of Material Fact

Plaintiff does not dispute that an employer may legitimately discharge an employee who displays volatile behavior or who seeks to engage in adversarial and antagonistic behavior with his co-workers. See Herron v. DaimlerChrysler Corp., 388 F.3d 293, 301 (7th Cir. 2004). Instead, he tries to argue that he did not engage in any such behavior. His argument misses the point. It is undisputed that HMMA's management was first alerted to the situation by complaints reported by Plaintiff's co-workers. There is no suggestion that Reggie Johnson or Lisa Chumney reported

5

Plaintiff based upon some discriminatory motive, and HMMA management was entitled to rely upon what those team members told them. See Jones v. Gerwins, 874 F.2d 1534, 1540 (11th Cir. 1989)("The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation."). Plaintiff has failed to offer any evidence to dispute that two separate HMMA Team Members reported his aggressive behavior and that HMMA believed those reports and relied upon them in discharging him.

### 2. Plaintiff's Offer of "Me-Too" Evidence is Irrelevant

Plaintiff offers the following conclusory "opinion" testimony of one present and one former Team Member (i.e., Darnell Sims and Deric Golden): "Scott Weddington allows Caucasian employees to break rules without consequences, but he is much harder on African-American employees." (Plaintiff's Ex. 5 and 6: Affidavits of Darnell Simms and Deric Goldon). This conclusory testimony is nothing more than sheer speculation and is completely devoid of any factual support. See, e.g., Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995) (plaintiff's speculation is insufficient evidence of discrimination); Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996)("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.")(citations and internal quotations omitted); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) ("To survive summary judgment, the plaintiff must present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice."); Laurence v. Chevron U.S.A., Inc., 885 F.2d 280, 285 (5th Cir. 1989)(conclusory statements cannot support an inference of unlawful discrimination).

6

Additionally, evidence that Plaintiff or another employee believes they have been subjected to discrimination is neither relevant nor admissible.  See, e.g., Douglas v. United Servs. Auto Assn., 79 F.3d 1415, 1430 (5th Cir. )("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").  Finally, neither witness has any personal knowledge regarding Plaintiff's situation, and this "me too" evidence has no relevance to the issue of whether *Plaintiff* was discriminated against.  See Schrand v. Federal Pacific Electric Co., 851 F.2d 152, 156 (6th Cir. 1988)(lower court erroneously admitted prior acts of discrimination because the evidence could not "logically or reasonably be tied to the decision to terminate [plaintiff]"); Goff v. Continental Oil Co., 678 F.2d 593, 597 (5th Cir. 1982)(plaintiff not allowed to introduce testimony of three other employees alleging discrimination because such testimony did not relate to whether plaintiff had suffered discrimination), overruled on other grounds, Carter v. South Central Bell, 912 F.2d 832 (5th Cir. 1990).

**3.  Evidence of Other Alleged Discriminatory Motives is Irrelevant**

Plaintiff alleges that he heard Scott Weddington make derogatory comments regarding Korean employees, (Plaintiff's Brief, at 12), which Weddington denies.  There is no issue relating to national origin discrimination in this case.  Courts have uniformly held that such extraneous evidence of other alleged illegal motivations is irrelevant because it does not directly relate to the issue in the case. See EEOC v. HBE Corp., 135 F.3d 543, 552 (8th Cir. 1998)(in race discrimination case, evidence of religious bias via comments referring to co-workers as "camel-jockey" and anti-Semitic remarks "should have been excluded because it was not directly related to the issue in the case"); Crowe v. Wiltel Communications Systems, 103 F.3d 897, 900 (9th Cir. 1998)("Crowe

7

alleged that the defendants discriminated against her based on her gender. Since evidence of sexual orientation and race discrimination did not relate directly to any issue at trial, the district court did not abuse its discretion in excluding this evidence."). Thus, this evidence does not aid Plaintiff's claims for race discrimination or retaliation.

**C.     Plaintiff's Retaliation Claim Fails as a Matter of Law**

To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. See, e.g., Weaver v. Casa Gallardo, 922 F.2d 1515, 1524 (11th Cir. 1991). Plaintiff has failed to establish the first and third required elements of his prima facie case.

**1.    Plaintiff Did Not Engage in Protected Activity**

Plaintiff contends that he said that he was being "harassed" by Weddington during his meeting with Team Relations and complained in the meeting regarding the Chumney situation that Weddington "did not like his kind…" (Plaintiff's Brief, at 11)(Smith Depo., at 198:3-199:11). Even if true, these vague statements do not constitute opposition to conduct made unlawful by Title VII. See e.g., Durkin v. City of Chicago, 341 F.3d 606, 614-15 (7th Cir. 2003)(employee's repeated complaints, which were "vague and concerned subject matters other than harassment," and did not adhere to the "formal channels of the City's complaint mechanism," were not statutorily protected activity. ); Woods v. Illinois Dep't of Transp., 2005 U.S. Dist. LEXIS 32708, No. 03 CV 4098 JPG, 2005 WL 1691107, at *4 (S.D. Ill. May 31, 2005) (holding that informal complaint was not protected activity where plaintiff "did not complain of race discrimination or any other practice made unlawful by Title VII"); Schulz v. Varian Med. Sys., Inc., 315 F. Supp. 2d 923, 937 (N.D. Ill. 2004) (finding that plaintiff's complaints were "too generic to rise to the level of statutorily-protected

8

activity"); Drago v. Aetna Plywood, Inc., 968 F. Supp. 1251, 1255-56 (N.D. Ill. 1997) (finding that plaintiff's complaints did not constitute statutorily protected expression where she did not explicitly report sexual harassment or other activity that violated Title VII); cf. Jones-Walsh, 2005 U.S. Dist. LEXIS 23089, 2005 WL 2293671, at *5 (holding that plaintiff's informal complaints could constitute protected activity where the complaints "unambiguously related to harassment in the workplace"). Plaintiff must prove that he complained about conduct made unlawful by Title VII. A generalized complaint of unfair treatment, such as that made by Plaintiff, does not constitute engaging in protected activity.

### 2. Plaintiff Cannot Prove a Causal Connection Between His Complaint and His Discharge

Even if Plaintiff's vague complaints constitute protected activity, the evidence shows no causal connection between his ambiguous protest on November 28, 2005, and his termination. It is undisputed that the investigation was undertaken as a result of complaints made by Johnson and Chumney, which were made on November 22 and 28, respectively, and that it was these incidents that ultimately led to Plaintiff's termination. Thus, the incidents that led to his termination occurred before Plaintiff made any complaint. This compels the conclusion that Plaintiff was not being retaliated against. See Morgan v. Hilti, 108 F.3d 1319, 1324 (10th Cir. 1997) (plaintiff's argument that his termination was retaliatory was rejected because the court noted that the termination decision "simply completed the . . . process already set in motion" before the specific incidents of protected activity occurred).

It is undisputed that Plaintiff had been spoken with regarding his behavior before he made any protests, and that he was well aware that his job might be in jeopardy when he first made his complaints. (Smith Depo., at 147:3-23, 161:5-21, 180:5-182:13) (Hannah Decl., ¶¶ 3-5). The anti-discrimination laws do not allow Plaintiff to create a retaliation claim by making complaints only in

9

response to learning that his job is in jeopardy.  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.)("Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace."),  cert. denied, 528 U.S. 818 (1999); Mason v. Huttig Sash & Door Co. Ret. Plan for Salaried Employees, 26 Fed. Appx. 531, 535 (6th Cir. 2004)(plaintiff could not show causal connection between his complaint and discharge where he had already been notified that his job was in jeopardy before making any complaints)(unpublished).

Finally, Plaintiff has no evidence that the members of the Termination Committee that voted to terminate his employment had any knowledge of any supposed complaints of discrimination.  At a minimum, Plaintiff has the burden to prove that members of the Termination Committee knew that he engaged in protected activity.  Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997)("In a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression….").  Absent some evidence that the Committee was aware of any complaints by Plaintiff, his retaliation claim must be dismissed.  See e.g., Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000)("A decision maker cannot have been motivated to retaliate by something unknown to him."), cert. denied, 532 U.S. 1937 (2001).

### 3. Plaintiff Cannot Dispute the Legitimate, Non-Retaliatory Reasons for His Discharge

HMMA has offered legitimate, non-retaliatory reasons for Plaintiff's discharge.  He engaged in multiple incidents of volatile behavior and insubordination.  As discussed supra at pages 5-8, Plaintiff has failed to offer any evidence to suggest that HMMA's stated reasons for its actions are a pretext for discrimination or retaliation.  For all of these reasons, Plaintiff's retaliation claims must be dismissed.

**D.     The Evidence of Plaintiff's Habit to Lose His Temper is Highly Relevant**

Plaintiff incorrectly argues that "[w]hether Larry Smith ever lost his temper on another job is not relevant to this lawsuit." (Plaintiff's Brief, at 2). This evidence is highly relevant to show Plaintiff's habit of losing his temper when confronted by an employer with performance deficiencies. Rule 406 of the Federal Rules of Evidence provides: "Evidence of the habit of a person … whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person … on a particular occasion was in conformity with the habit or routine practice." See also Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1523 (11th Cir.1985) (habit evidence "allows the trier of facts to infer that the habit was conformed with on a particular occasion"); Fed.R.Evid. 406 Advisory Committee's Notes ("Agreement is general that habit evidence is highly persuasive as proof of conduct on a particular occasion."). Evidence that Plaintiff has repeatedly engaged in explosive behavior time and time again when confronted with performance deficiencies by an employer is highly relevant. Perrin v. Anderson, 784 F.2d 1040 (10th Cir. 1986)(affirming district court's allowance of prior violent behavior in civil rights action as habit evidence to show that the plaintiff acted violently during the incident at issue).

As previously stated, it is not necessary for this Court to find that Plaintiff actually engaged in threatening behavior, the Court must only determine if HMMA believed in good faith that he did. While for purposes of this motion, this Court must view the evidence in the light most favorable to Plaintiff, it is not required to turn out the lights altogether. See Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1123, 1125-26 (D.C. Cir. 2002) (holding no reasonable jury could believe plaintiff's testimony); Scott v. Genuine Parts Co., No. IP 00-866-C-T/K, 2002 U.S. Dist. LEXIS 24284, at *13 (S.D. Ind. March 29, 2002) ("Given all this, no reasonable jury could believe Plaintiff's self-serving, unsupported contentions."). HMMA submits that no reasonable trier of fact could conclude that

11

Plaintiff did not engage in the conduct attributed to him by Johnson and Chumney, particularly given that he has engaged in explosive behavior on five other occasions when an employer has attempted to address performance concerns with him. No reasonable trier of fact could believe Plaintiff's testimony that each of these incidents never happened and are complete fabrications. (Smith Depo., at 220:12-221:15).

### III.    CONCLUSION

For all the foregoing reasons, HMMA is entitled to summary judgment on all of the Plaintiff's claims. Defendant respectfully requests that this Court grant its Motion for Summary Judgment, dismiss this case with prejudice, and award the Defendant its costs and attorneys' fees in defending against this case.

Respectfully submitted,

/s/ Brian R. Bostick

J. Trent Scofield (SCO024)
Brian R. Bostick (BOS015)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205)328-1900
Facsimile: (205)328-6000
Email: brian.bostick@ogletreedeakins.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of December, 2007, I electronically filed the foregoing Defendant's Reply Brief in Support of Its Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Kathryn Dickey and Janice Spears-Turk.

      /s/ Brian R. Bostick
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205)328-1900
Facsimile: (205)328-6000
Email: brian.bostick@odnss.com

5361548.1

13